1  SANDRA R. BROWN
   Acting United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN R. WELK
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  YASIN M. ALMADANI (Cal. Bar No. 242798)
   Assistant United States Attorney
6        1400 United States Courthouse
         312 North Spring Street
7        Los Angeles, California 90012
         Telephone: (213) 894-6968
8        Facsimile: (213) 894-7177
         E-mail:  Yasin.Almadani@usdoj.gov
9
10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | No. CV 17-05766 |
|---|---|
| Plaintiff, | **VERIFIED COMPLAINT FOR FORFEITURE** |
| v. | 18 U.S.C. § 981(a)(1)(A) and (C), and 21 U.S.C. § 881(a)(6) |
| $3,168,400.00 IN U.S. CURRENCY, $489,900.00 IN U.S. CURRENCY FROM A SAFE DEPOSIT BOX AT WILSHIRE STATE BANK, $200,000.00 IN U.S. CURRENCY FROM A SAFE DEPOSIT BOX AT BANK OF AMERICA, $138,401.14 IN BANK FUNDS FROM WILSHIRE STATE BANK, 72 GOLD BARS, AND 184 ASSORTED COINS, | [DEA] |
| Defendants. | |

Plaintiff United States of America brings this claim against the defendants $3,168,400.00 in U.S. currency, $489,900.00 in U.S. currency from a safe deposit box at Wilshire State Bank, $200,000.00 in U.S. currency from a safe deposit box at Bank of America, $138,401.14 in bank funds from Wilshire State Bank, 72 gold bars, and 184 assorted coins, and alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), and 21 U.S.C. § 881(a)(6).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395(b).

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendants are $3,168,400.00 in U.S. currency, $489,900.00 in U.S. currency from a safe deposit box at Wilshire State Bank, $200,000.00 in U.S. currency from a safe deposit box at Bank of America, $138,401.14 in bank funds from Wilshire State Bank, 72 gold bars, and 184 assorted coins (jointly the "defendant assets"), seized by law enforcement agents executing search warrants against Gail Choi ("Choi") after apprehending her at a drug trafficking related cash drop outside her residence in Los Angeles, California.[1] The defendant assets were seized from Choi's residence in Los Angeles, California, Choi's safety deposit boxes at Bank of

---

[1] Pursuant to Local Rule 5.2-1, personal residence addresses have been omitted from this Complaint.

America and Wilshire State Bank, and Choi's bank account at Wilshire State Bank.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District, where it shall remain subject to the jurisdiction of this Court during the pendency of this action.

7. The interests of Choi, Jung Hee Park ("Park"), and Yunee Lee ("Lee") may be adversely affected by these proceedings.

## EVIDENCE SUPPORTING FORFEITURE

8. Between July 2015 and November 2015, the Drug Enforcement Administration ("DEA") conducted a wiretap investigation involving Isidro Solorio ("Solorio") also known as Chilo.  Through information gathered during this investigation, agents learned that Solorio collected narcotics proceeds on behalf a Mexican source of supply ("SOS").

9. Through intercepted conversations, agents learned that Solorio coordinated narcotics proceeds deliveries with a known contact of the Mexian SOS, Gilbert Jauregui ("Jauregui") and other known and unknown organization members.  The narcotics proceeds deliveries to Solorio were generated from narcotics distributed by Solorio.

10. After delivery to Solorio the narcotics proceeds were either transported directly to Mexico (as currency) where the currency was remitted to the Mexican SOS or the narcotics proceeds were transported to the Garment District in downtown Los Angeles (the "Garment District") to be laundered through various businesses there using a method identified by law enforcement as the "Black Market Peso Exchange."

11. There are several variations of the Black Market Peso Exchange. The basic scheme is that narcotics proceeds (large sums of currency) are provided to a Garment District business with the understanding that the business will feign ignorance as to the source of the drug proceeds and will help funnel the currency to a drug trafficking organization's counterpart/SOS in Mexico. One such Black Market Peso variation that Mexican drug trafficking organizations utilize to launder and transmit their narcotics proceeds to Mexico involves the purchase of merchandize and other commodities through businesses in the Garment District. The goods purchased with the narcotics proceeds are exported to businesses in Mexico where those items are sold and the profits are returned to the Mexican SOS undetected by law enforcement.

12. Through wire intercepts of Solario, agents learned that Jauregui regularly delivered large quantities of narcotics proceeds to Solorio.

13. On October 15, 2015, based on the ongoing wiretap investigation, Riverside County Superior Court Judge Becky L. Dugan authorized the interception of wire and electronic communications of Target Telephone #50 used primarily by Jauregui.

14. During the wire intercepts of Jauregui, agents intercepted conversations between Jauregui and his contacts in Mexico. Agents learned that Jauregui operated a narcotics stash house in the Bell Gardens area in Los Angeles County. Jauregui's Mexican SOS contacts instructed Jauregui when and where to hand-off shipments of narcotics and collect narcotics proceeds. Jauregui was instructed by his contacts in Mexico to hand-off the drug proceeds to various Asian women identified by Jauregui's cartel contacts in Mexico.

15.  On November 3, 2015, through Jauregui's intercepted conversations, agents learned that the Mexican SOS had instructed Jauregui to meet with Choi and hand-off $100,000.00 in narcotics proceeds.

16.  The Mexican SOS also instructed Jauregui to deliver kilograms of cocaine to a narcotics customer after delivering currency to Choi.  The Mexican SOS provided Jauregui with Choi's telephone number.

17.  Shortly thereafter, Jauregui contacted Choi arranging to meet outside Choi's residence in Los Angeles to make the $100,000.00 currency drop-off.  Agents heard Choi confirm the expected drop-off with Jauregui.  Choi provided Jauregui her address in Los Angeles and instructed Jauregui to call her when he arrived at her residence.  Choi confirmed that she would meet Jauregui in front of her apartment complex.

18.  Based on the intercepted conversations, agents established surveillance at Choi's apartment complex in Los Angeles.  Agents observed Jauregui arrive at the location and intercepted Jauregui's call to Choi indicating that he had arrived at her residence.  Choi confirmed that she would meet Jauregui downstairs.

19.  Agents detained Jauregui outside Choi's aptment building and within a few minutes observed Choi exiting the lobby of her building carrying an empty bag while calling Jauregui's cell phone.

20.  Based on the wire intercepts, agents obtained a State search warrants for Jauregui's residence in Bell Gardens, his vehicle, and Choi's residence in Los Angeles.  The search warrants were authorized by the Honorable Judge Yriate of the Los Angeles County Superior Court.

21. Pursuant to the search warrants, agents searched Choi's and Jauregui's residences, as well as Jauregui's vehicle.

22. From Jauregui's vehicle, agents seized approximately $100,000.00 in narcotics proceeds found inside a grocery bag. Trained and certified narcotics detecting canine "Zaia" alerted positively on the grocery bag containing the currency, indicating that there was an odor of illegal drugs emanating from the bag. From Jauregui's residence in Bell Gardens, agents seized four kilograms of cocaine.

23. Jauregui provided a post-<u>Miranda</u> statement. Jauregui told agents that he had been working for a drug cartel, delivering kilograms of cocaine and illegal drug proceeds. Jauregui explained that when he collected the narcotics proceeds, his Mexican SOS contacts from Mexico gave him instructions on when, where, and to whom to hand-off the drug proceeds, which was either to business owners in the Garment District or to various Asian women.

24. Jauregui told agents that in the past, even as recently as the previous week, Jauregui had handed-off drug proceeds to a woman Jauregui believed to be Choi's daughter living in the Glendale area.

25. Jauregui told agents that on November 3, 2015 (the day of the seizure), Jauregui had been instructed by his contacts in Mexico to meet this time with Choi as opposed to her daughter.

26. Prior to executing the search warrant at Choi's residence, agents <u>Mirandized</u> Choi who agreed to speak with them. Choi told the agents that her daughter, Lee, had instructed Choi to meet with Jauregui to receive money from Jauregui.

27. Choi admitted to the agents that she (Choi) had been collecting money in this fashion from Mexican individuals for over 20

6

years, but would not elaborate much more on her involvement.  Choi refused to identify her contacts in Mexico.  Choi did, however, admit that the money was collected through currency hand-offs in the United States and used to purchase commodities and textiles in the United States, which were then sent to Mexico.

28.  Agents confronted Choi with the fact that the currency used in the hand-offs was proceeds of drug trafficking activities.  Choi admitted that she understood that the nature of the currency was suspicious.

29.  Executing a search warrant on Choi's residence, agents found a safe in a bedroom that appeared to be used for storage.  Trained and certified narcotics detecting canine Zaia was run through Choi's residence, and alerted positively on the safe, indicating that the odor of narcotics was emanating from the safe.  Inside the safe agents found and seized $3,168,400.00 in U.S. currency (a defendant asset), 184 assorted valuable coins (a defendant asset), and 72 gold bars (a defendant asset).

30.  Choi told agents that the approximately $3,000,000.00 in U.S. currency found in her safe was from years of collecting money in the fashion described in paragraphs 28 and 29, and that one of the benefits to Choi was to not have to report money to the federal government thereby avoiding taxes.

31.  At Choi's residence agents also found and seized bank statements from Wilshire State Bank and Bank of America for accounts in Choi's name, additional financial statements and paperwork in Choi's name, and keys for safe deposit boxes at Wilshire State Bank and Bank of America.

32.  On November 4, 2015, agents obtained search warrants for various bank accounts in Choi's name and bank safe deposit boxes belonging to Choi.  Pursuant to those warrants, agents seized $489,900.00 in U.S. currency from a safe deposit box at Wilshire State Bank (a defendant asset), $200,000.00 in U.S. currency from a safe deposit box at Bank of America (a defendant asset), and $138,401.14 in bank funds from Wilshire State Bank (a defendant asset).

## CLAIMS FOR RELIEF

33.  Based on the foregoing, plaintiff alleges that the defendant assets represent or are traceable to proceeds of illegal drug trafficking and/or were intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq.  The defendant assets are therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

34.  Based on the forgoing, plaintiff also alleges that the defendant assets were involved in or traceable to money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, with the specified unlawful activity being drug trafficking as enumerated in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).  The defendant assets are therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

35.  Based on the foregoing, plaintiff also alleges that the defendant assets were involved in or traceable to unlicensed money transmission, in violation of 18 U.S.C. § 1960.  The defendant assets are therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

    (a) that due process issue to enforce the forfeiture of the defendant assets;

    (b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

    (c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

    (d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: August 3, 2017    SANDRA R. BROWN
             Acting United States Attorney
             LAWRENCE S. MIDDLETON
             Assistant United States Attorney
             Chief, Criminal Division
             STEVEN R. WELK
             Assistant United States Attorney
             Chief, Asset Forfeiture Section

             */s/ Yasin M. Almadani*
             YASIN M. Almadani
             Assistant United States Attorney

             Attorneys for Plaintiff
             United States of America

**VERIFICATION**

I, Joseph Carrillo, declare and say that:

1. I am a Task Force Officer with the Drug Enforcement Administration.

2. I have read the attached Verified Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 3 day of August 2017 at Los Angeles, California.

JOSEPH CARRILLO
Task Force Officer - DEA