**LIMNEXUS LLP**
Pio S. Kim (CA Bar No. 156679)
  pio.kim@limnexus.com
Alexander Su (CA Bar No. 297869)
  alexander.su@limnexus.com
1055 West Seventh Street, 28th Floor
Los Angeles, California 90017
Phone: (213) 955-9500
Fax: (213) 955-9511

Attorneys for Claimant Gail Choi

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>   v.<br><br>$3,168,400.00 IN U.S. CURRENCY, $489,900.00 IN U.S. CURRENCY FROM A SAFE DEPOSIT BOX AT WILSHIRE STATE BANK, $200,000.00 IN U.S. CURRENCY FROM A SAFE DEPOSIT BOX AT BANK OF AMERICA, $138,401.14 IN BANK FUNDS FROM WILSHIRE STATE BANK, 72 GOLD BARS, AND 184 ASSORTED COINS,<br><br>      Defendants. | Case No. CV 17-05766-PA (AFMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS VERIFIED COMPLAINT BY CLAIMANT GAIL CHOI**<br><br>**(Filed concurrently with Notice of and Motion to Dismiss Verified Complaint; and [Proposed] Order)**<br><br>Judge: Honorable Percy Anderson<br><br>Date: December 4, 2017<br>Time: 1:30 pm<br>Courtroom: 9A<br><br>Trial: None Set |

{01163317}

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In its Complaint, the Government alleges that it seized $100,000.00 from Gilbert Jaregui ("Jaregui") as he attempted to deliver it to Claimant Gail Choi (the "Claimant"). The Government specifically alleges intercepted telephone communications and Jaregui's confession establishing that Jaregui was a drug and drug money courier and said $100,000 constituted drug proceeds.

The Government also alleges that it subsequently seized the named defendants (the "Defendants") from a safe (the "Safe") at the Claimant's residence, two safe deposit boxes (the "SDBs") at two different banks and a bank account at one of the banks (the "Account"). The Defendants are:

- $3,168,400.00 in U.S. currency from the Safe ;
- 72 gold bars from the Safe;
- 184 assorted coins from thee Safe;
- $489,900.00 in U.S. currency from a SDB at Wilshire State Bank ("WSB");
- $200,000.00 in U.S. currency from a SCB at Bank of America ("BoA"); and
- And $138,410.14 from the Account at WSB.

However, the Government fails to allege any specific facts establishing that any of the Defendants are connected to illegal drug trafficking, money laundering or money transmitting business such that they are forfeitable. In fact, the Government fails to allege any such fact, specific or general, against $168.4000 of the Defendant $3,168,4000 and the defendants 72 Gold Bars, 184 Assorted Coins, $489,900, $200,000 and $138,410.14. This Motion must granted pursuant to Federal Rules of Civil Procedure Rule 12 (b) and Supplemental Rule G(2)(f) on the ground that the Complaint fails to state a claim upon which relief can be granted.

## II. RELEVANT PLEADING STANDARD

Under Federal Rules of Civil Procedure Supplemental Rule G(2)(f), the Government's complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. At trial, the burden of proof is on the Government to establish forfeitability by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). Where the Government's theory is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government must also establish that there was a substantial connection between the property and the offense. 18 U.S.C. § 983(c)(3).

What the Government does not plead, it cannot prove. Courts will not assume that plaintiff can prove facts not alleged in the complaint. See *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526-27 (1983); *Gilbert v. New Line Prods.*, 2009 U.S. Dist. LEXIS 130675 (C.D. Cal. Nov. 16, 2009) (applying same standard to motions to dismiss). And if the Government cannot prove its case, then the Complaint fails to state a claim.

## III. SUMMARY OF ALLEGATIONS

### a. Gilbert Jaregui

As part of an ongoing investigation, a Drug Enforcement Administration ("DEA") Task Force learned that Jaregui coordinated deliveries of narcotics proceeds for a known drug distributor named Chilo. Compl. ¶¶ 8-9. Jaregui regularly delivered large quantities of narcotics proceeds to Chilo. Compl. ¶ 12.

After further investigation, the DEA learned that Chilo and Jaregui were engaged in a money laundering scheme called the Black Market Peso Exchange. The scheme loops money through Mexican drug couriers, who on behalf of the cartels, deliver cash to Asian women. The Asian women use the proceeds to purchase goods in

the Los Angeles Garment District. Then, they export the goods back to Mexico for sale, returning the funds to the drug dealers. Compl. ¶¶ 8-11, 14-17, 23, 27.

The DEA obtained a search warrant to intercept Jaregui's wire and electronic communications. Compl. ¶ 13. On November 3, 2015, the DEA learned that Jaregui had received instructions to meet with the Claimant and deliver $100,000 in cash. The cash were drug proceeds. Compl. ¶ 15. After speaking with the Claimant on the phone, Jaregui traveled to the Claimant's residence in Los Angeles. At her residence, law enforcement agents detained Jaregui, whose vehicle contained a grocery bag. Compl. ¶ 19. A drug sniffing dog alerted that Jaregui's bag smelled of drugs and the agents seized the bag. Inside the bag, the agents found the $100,000. Compl. ¶ 22. Jaregui also confessed that he was a drug and drug money courier for a drug cartel. Compl. ¶ 23.

### b. The Claimant

Jaregui stated that he had recently delivered drug proceeds to a woman whom he believed to be the Claimant's daughter. Compl. ¶ 24. The agents also interrogated the Claimant, who stated that she had received cash deliveries from Mexican individuals for over 20 years. The cash was used to purchase commodities and textile in the US, which were then sent to Mexico. Compl. ¶¶ 27. However, the Government makes no allegation that the proceeds of the commodities and textile sent to Mexico were given to drug dealers in Mexico.

When the agents informed the Claimant that Jaregui's cash were proceeds of drug trafficking, the Claimant stated that the nature of the currency was suspicious. Compl. ¶ 28.

Later, the agents obtained and executed a search warrant of the Claimant's residence. A drug sniffing dog alerted to the Safe, indicating that the odor of narcotics was emanating from the Safe. Inside the Safe were the defendants $3,168,400 in cash, 72 gold bars, and 182 assorted valuable coins. Compl. ¶ 29. The Government does not allege that the drug dog alerted to the Defendant found in the Sage.

When questioned about the cash, the Claimant stated that she had collected approximately $3,000,000 of the Defendant $3,168,400 from Mexican individuals.. Compl. ¶ 30.

The search of the Claimant's residence also revealed her bank statements and SDB keys. Subsequently, the agents seized the remaining Defendants from the SDBs at WSB and BOA and the Account at WSB. Compl. ¶¶ 31-32. No criminal charges have been filed against the Claimant.

## IV. SUMMARY OF CLAIMS FOR RELIEF

The Government's first claim is that the Defendants are forfeitable because:

- they constitute or are "derived from proceeds traceable to a violation of Title 18 of the U.S. Code or any offense constituting specified unlawful activity (as defined in 18 U.S.C. § 1956(c)(7))" under 18 U.S.C. § 981(a)(1)(C); or
- they are things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of Title 21. 21 U.S.C. § 881(a)(6).

The Government's second claim is that the Defendants were "involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of [Title 18], or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A). Specifically, the Government claims that the Defendants were involved in or traceable to money laundering regarding drug trafficking. A finding of money laundering requires 3 elements: (1) the actor conducted a financial transaction that in fact involved the proceeds of specified unlawful activity (here, drug trafficking); (2) the actor knew that the property involved was the proceed of the drug trafficking; and (3) that the actor knew that the transaction she was engaged in was for the purpose of concealing ownership or control of ill-gotten proceeds, *US v. One 1997 Mercedes*, 175 F.3d 1129,

1131-32 (9th Cir. 1999), or the amount of the drug proceeds involved in the transaction was greater than $10,000, 18 U.S.C. § 1957(a).

Finally, the Government's third claim is that the Defendants were involved in or traceable to unlicensed money transmission business, in violation of 18 U.S.C. § 1960. The statute prohibits (1) knowingly conducting, controlling, managing, supervising, directing or owning all or part of an unlicensed money transmitting business; or (2) operating a money transmitting business with the knowledge that the funds were derived from or intended to promote criminal activity. *Id*.

## V. THE COMPLAINT FAILS TO ALLEGE STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Government bases its claim for forfeiture against the Defendants on the following allegations:

(1) The drug dealers in the U.S. use the Black Market Peso Exchange to repatriate drug proceeds to the drug dealers in Mexico;

(2) Jaregui was a drug and drug money courier, and he tried to deliver $100,000 to the Claimant and stated that he also delivered drug proceeds to a person whom he believed to be the Claimant's daughter once;

(3) A drug dog alerted to the Safe, not to the defendants found in the Safe;

(4) When an agent told her that said $100,000 Jaregui was bringing to the Claimant constituted drug proceeds, the Claimant stated that the money was suspicious;

(5) The Claimant stated that approximately $3,000,000 of the Defendant $3,168,400 found in the Safe were collected from money received from Mexican individuals over a period of 20 years; and

(6) (In contradiction to her purported statement above,) the Claimant also stated that the money received from the Mexican individuals were used to purchase commodities and textiles, which were then sent to Mexico.

### a. The Complaint Fails to Allege Facts Establishing the Requisite Substantial Connection between Any of the Defendants and Drug Trafficking, Money Laundering or Illegal Money Transmitting Business

The Government's claim that the Defendants are forfeitable is largely based on a single assumption. The Government assumes that because Jaregui, who might be of Mexican background, tried to deliver $100,000 in drug proceeds to the Claimant and unknown Mexican individuals delivered approximately $3,000,000 of the Defendant $3,168,400 to the Claimant, all Defendants must be proceeds of, or were involved in, drug trafficking, money laundering or illegal money transmitting business (the "Predicate Crimes"). The Government's allegations do not support the assumption.

The Government fails to allege a whole host of facts necessary to connect the Defendants to any of the Predicate Crimes. It fails to allege any particular facts relating to the Mexican individuals, including any facts showing that they were drug or drug money couriers or engaged in illegal money transmitting business. It fails to allege any specifics about when and how much of said $3,000,000 were delivered to the Claimant. It fails to allege any of the usual indications of drug trafficking, including the allegations that the deliveries were of the lower denominations used often in drug dealings and that the cash were wrapped in air-sealed packages or other types of packaging design to hide the odor of narcotic.

Just as critically, the Government fails to allege that the Claimant did not have legitimate sources of income which could explain her possession of the Defendants. If the Claimant had a business which generated cash income, then receiving cash is not indicative of any criminality, even if it was delivered by Mexican individuals.[1]

---

[1] Should this matter be tried, the Claimant will show that she did indeed have a legitimate business which was the source of the Defendants. The Defendants were seized more than two years ago, and the Government had ample time to investigate the Claimant's contention that she had such a legitimate source for the Defendants.

{01163317}   7
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

The Claimant anticipates that to support its claim, the Government will point to the drug dog's alert to the Safe and the Claimant's statements that she thought the $100,000 possessed by Jagurei was suspicious and that she used the money collected from the Mexican individuals to buy commodities which were sent to Mexico. The Government's reliance on these allegations is of no help.

The drug dog alert was to the Safe, not to the Defendants in the Safe, meaning only that the Safe was in the presence of narcotics. It does not show that any of the Defendants were in the presence of narcotics. Furthermore, even if we assume for the sake of argument only that the dog alerted to the contents of the Safe, it is impossible to know which of the Defendants in the Safe or how much of the Defendant the dog alerted to was in the presence of narcotics. In other words, even if only $100 of the Defendant $3,168,400 were in the presence of narcotics, the dog would have alerted to the entirety of the Defendant.

It is only natural for the Claimant to state that the $100,000 in Jaregui's possession was suspicious in response to the agent informing her that the money constituted drug proceeds. It does not mean that she knew or suspected the money to be drug proceeds before the agent made his comments to her.

Finally, the Claimant's statement that she spent the money received from Mexican individuals to purchase goods in the US and send them to Mexico indicates that the Defendants are not forfeitable. If it is assumed for the sake of argument only that the Claimant was, in fact, involved in the Black Market Peso Exchange, the cash involved in the Exchange would have been spent to buy goods to send to Mexico. In short, the supposed money for the Exchange would have been used up and cannot be part of the Defendant $3,168,400.

The allegation that Jaregui attempted to deliver $100,000 in drug proceeds to the Claimant cannot establish or even plausibly suggest that approximately $3,000,000 the Claimant received from Mexican individuals over a period of 20 years constitute proceeds of or were involved in any of the Predicate Crimes. As for the other seized

assets of the Claimant, the allegation is even less meaningful since it is not alleged that the Claimant received the assets from Mexican individuals. Therefore, all Defendants must be dismissed.

### b. The Complaint Fails to Make Any Pertinent Allegation against $168,400.00 of the Defendant $3,168,400.00 from the Safe and the Defendants 72 Gold Bars, 184 Assorted Coins, $489,900.00, $200,000.00 and $138,410.14

The Claimant stated that the money from Mexican individuals were used to buy goods and that approximately $3,000,000 of the Defendant $3,168,400 was saved from the money from the individuals. The Claimant did not make a statement about rest of the Defendants.

The Government likewise makes no allegations about $168,400 of the Defendant $3,168,400.00 and other Defendants. It does not allege any facts whatsoever about when and how the assets were obtained or about their sources. Obviously, without such allegations, it is impossible to even intimate that the assets constitute proceeds or were involved in any of the Predicate Crimes, each of which is composed of specific multiple elements. A "large sum of money, by itself, is insufficient to show a connection to drugs. *US v. Currency, US$ 42,500.00, 283 F.3d 977, 981-82 (9th Cir. 2002).*

The only allegation made about them is that the Claimant possessed them. This is not sufficient to to show any connection between the assets and any criminal activity, let alone the Predicate Crimes. Even if the Claimants were a money launder, her mere possession of the assets does not make them forfeitable, without evidence that the assets themselves are substantially connected to crimes giving arise to forfeiture. The Government fails to allege any such evidence and the assets must be dismissed.

## VI. CONCLUSION

Based on the foregoing, the Claimant hereby respectfully requests that the Court grant her motion and enter the [Proposed] Order filed concurrently with this Motion.

DATED: November 6, 2017                    LIMNEXUS, LLP

*/s/ Pio S. Kim*
Pio S. Kim, Esq.
Alexander Su, Esq.
Attorneys for Claimant