SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
YASIN M. ALMADANI
California Bar No. 242798
Assistant United States Attorney
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6968
     Facsimile: (213) 894-7177
     E-mail: Yasin.Almadani@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>$3,168,400.00 IN U.S. CURRENCY, $489,900.00 IN U.S. CURRENCY FROM A SAFE DEPOSIT BOX AT WILSHIRE STATE BANK, $200,000.00 IN U.S. CURRENCY FROM A SAFE DEPOSIT BOX AT BANK OF AMERICA, $138,401.14 IN BANK FUNDS FROM WILSHIRE STATE BANK, 72 GOLD BARS, AND 184 ASSORTED COINS,<br><br>    Defendants.<br><br>GAIL CHOI and YUNEE LEE,<br><br>    Claimants. | Case No. CV 17-05766-PA (AFMx)<br><br>**PLAINTIFF UNITED STATES OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE MOTION TO DISMISS FILED BY CLAIMANTS GAIL CHOI AND YUNEE LEE**<br><br>Judge:      Hon. Percy Anderson<br><br>Date:       December 4, 2017<br>Time:      1:30 p.m.<br>Courtroom: 9A |

# **TABLE OF CONTENTS**

Introduction ..................................................................................1

Statement of Facts ........................................................................1

Legal Standard ..............................................................................6

    Fed R. Civ. P. 12(b)(6) ..............................................................6

    Supplemental Rule G(8)(b)(i) and G(2)(f) ................................6

Argument.......................................................................................10

    The Government's Ultimate Burden at Trial ..............................10

    The Government's Allegations Are Sufficient to Supports Its Claims.................12

    Claimants' Miscellaneous Arguments are Unavailing and More Appropriate for Consideration in a Summary Judgment Motion....................................14

Conclusion ....................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aschroft v. Iqbal,*
  129 S. Ct. 1937 (2009) .......................................................................6, 10

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ...............................................................................6

*New Mexico Investment Council v. Ernest & Young,*
  641 F.3d 1089 (9th Cir. 2011)................................................................6

*United States v. $11,918.00,*
  2007 WL 3037307 (E.D. Cal. Oct. 17, 2007) .......................................7

*United States v. $36,110.00 in U.S. Currency,*
  2009 WL 692830 (D.S.C. Mar. 12, 2009)...............................................7

*United States v. $39,000 in Canadian Currency,*
  801 F.2d 1210 (10th Cir. 1986)..............................................................8

*United States v. $40,960.00 in U.S. Currency,*
  831 F. Supp. 2d 968 (N.D. Tex. 2011)....................................................9

*United States v. $97,667.00 in U.S. Currency,*
  538 F. Supp.2d 1246 (C.D. Cal. 2007)....................................................9

*United States v. $829,422.42 in U.S. Currency,*
  2013 WL 2446486 (D. Conn. June 5, 2013) ........................................11

*United States v. 1982 Yukon Delta Houseboat,*
  774 F.2d 1432 (9th Cir. 1985)..............................................................10

*United States v. 3885 Forest Street,*
  2013 WL 560161 (D. Col. Feb. 14, 2013) ...........................................15

*United States v. All Funds ... Held in the Name of Kobi Alexander,*
  2008 WL 3049895 (E.D.N.Y. 2008)....................................................14

ii

*United States v. Aguasvivas-Castillo*,
   668 F.3d 7 (1st Cir. 2012) ...................................................................11

*United States v. Aguilar*,
   782 F.3d 1101 (9th Cir. 2015)...................................................... 7, 8, 10

*United States v. Approximately $70,000.00 in U.S. Currency*,
   2007 WL 2992348 (E.D. Cal. Oct. 11, 2007) ......................................7

*United States v. Baker*,
   227 F.3d 955 (7th Cir. 2000)..............................................................11

*United States v. Cessa*,
   872 F.3d 267 (5th Cir. 2017)..............................................................11

*United States v. Elfgeeh*,
   515 F.3d 100 (2d Cir. 2008) ..............................................................11

*United States v. Funds in the Amount of $29,266*,
   96 F. Supp. 2d 806 (N.D. Ill. 2000) ...................................................15

*United States v. Funds in the Amount of $193,773.00*,
   2011 WL 6181424 (M.D. Fla. Dec. 13, 2011) ......................................9

*United States v. Garza-Gonzalez*,
   512 Fed. Appx. 60 (2d Cir. 2013) .......................................................11

*United States v. Heredia*,
   483 F.3d 913 (9th Cir.2007)...............................................................14

*United States v. Jewell*,
   532 F.2d 697 (9th Cir.1976)...............................................................14

*United States v. Kennedy*,
   201 F.3d 1324 (11th Cir. 2000).........................................................11

*United States v. Kivanc*,
   714 F.3d 782 (4th Cir. 2013)..............................................................11

iii

*United States v. McGauley*,
   279 F.3d 62 (1st Cir. 2002) ...................................................................11

*United States v. Mondragon*,
   313 F.3d 862 (4th Cir. 2002) ...................................................................7

*United States v. One Men's Rolex Pearl Watch*,
   357 Fed. Appx. 624 (6th Cir. 2009) ........................................................7

*United States v. Real Property... Kenmore Ave.*,
   657 F. Supp. 2d 1060 (D. Minn. 2009) ..................................................14

*United States v. Real Property Located at 22 Santa Barbara Drive*,
   264 F.3d 860 (9th Cir. 2001) .................................................................10

*United States v. Real Property Located at 5208 Los Franciscos Way*,
   385 F.3d 1187 (9th Cir. 2004) .................................................................9

*United States v. Seher*,
   562 F.3d 1344 (11th Cir. 2009) .............................................................11

*United States v. Sum of $70,990,605*,
   4 F. Supp. 2d 189 (D.D.C. 2014) ............................................................7

*United States v. The Painting Known and Described as "Madonna and Child,"* 2015 WL 108416 (S.D.N.Y. Jan. 6, 2015)........................................15

*United States v. Trost*,
   152 F.3d 715 (7th Cir. 1998) .................................................................11

*United States v. U.S. Currency, $42,500.00*,
   283 F.3d 977 (9th Cir. 2002) .................................................................10

**Statutes**

18 U.S.C. § 981(a)(1)(A) ..............................................................................1

18 U.S.C. § 981(a)(1)(C) ..............................................................................1

18 U.S.C. § 1960 ...........................................................................................2

18 U.S.C. §§ 1956 .........................................................................................2

21 U.S.C. § 881(a)(6)................................................................................1

**Rules**

Fed. R. Civ. P. 12..................................................................................6

Fed R. Civ. P. 12(b)(6)........................................................................1, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff United States of America ("the government") respectfully submits this memorandum of points and authorities in opposition to the identical motions to dismiss filed by claimants Gail Choi ("Choi") and Yunee Lee ("Lee") (collectively, the "motion").  (Dkts. 19 and 20.)  Claimants' motion should be denied because the government's complaint handily scales the low bar required to satisfy the pleading standards.

At this stage, the government is required only to plead sufficient facts, with all inferences drawn in favor of the government, to support a reasonable inference that the government will be able to meet its ultimate burden of proof at trial.  The facts alleged in the government's complaint, including Gail Choi's own admissions, establish more than a reasonable inference that for over 20 years Choi and her daughter had been operating an unlicensed money transmission business (a Black Market Peso Exchange) using Choi's affiliated garment business in Mexico to launder large loads of drug money for Mexican drug traffickers.  Choi amassed the defendant assets through her illegal business operations permeated with money laundering.

### STATEMENT OF FACTS

The facts set forth below are taken from the government's complaint.  The government has filed an in rem civil forfeiture complaint against the defendants $3,168,400.00 in U.S. currency, $489,900.00 in U.S. currency from a safe deposit box at Wilshire State Bank, $200,000.00 in U.S. currency from a safe deposit box at Bank of America, $138,401.14 in bank funds from Wilshire State Bank, 72 gold bars, and 184 assorted coins (collectively, the "defendant assets"), alleging that the defendant assets are subject to forfeiture:  (i) pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), because the defendant assets represent or are traceable to proceeds of illegal narcotics trafficking; (ii) pursuant to 18 U.S.C. § 981(a)(1)(A),

because the defendant assets were involved in or traceable to money laundering in violation of 18 U.S.C. §§ 1956 and 1957, and (iii) pursuant to 18 U.S.C. § 1960, because the defendant assets were involved in or traceable to unlicensed money transmission.  (Am. Compl. (Dkt 22) ¶ 33-35.)  The defendant assets were seized in November 2015 by law enforcement agents executing search warrants on Choi's residence after apprehending her at a drug trafficking related cash drop outside her residence in Los Angeles, California.  (*Id*. ¶ 5.)  The defendant assets were seized from Choi's residence in Los Angeles, California, Choi's safety deposit boxes at Bank of America and Wilshire State Bank, and Choi's bank account at Wilshire State Bank.  (*Id*.)

Between July 2015 and November 2015, the Drug Enforcement Administration ("DEA") conducted a wiretap investigation involving Isidro Solorio ("Solorio") also known as Chilo.  (*Id*. at ¶ 8.)  Through information gathered during this investigation, agents learned that Solorio collected narcotics proceeds on behalf a Mexican drug trafficking organization ("DTO").  (*Id*.)  Agents also learned that Solorio coordinated narcotics proceeds deliveries with a known contact of the Mexian DTO, Gilbert Jauregui ("Jauregui"), and other known and unknown organization members.  (*Id*. ¶ 9.)  The narcotics proceeds deliveries to Solorio were generated from narcotics distributed by Solorio.  (*Id*. ¶ 9.)  After delivery to Solorio the narcotics proceeds were either transported directly to Mexico (as currency) where the currency was remitted to the Mexican DTO or the narcotics proceeds were transported to the Garment District in downtown Los Angeles (the "Garment District") to be laundered through various businesses there using a method identified by law enforcement as the "Black Market Peso Exchange."  (*Id*. ¶ 10.)

There are several variations of the Black Market Peso Exchange.  (*Id*. ¶ 11.)  The basic scheme is that narcotics proceeds (large sums of currency) are provided to a Garment District business with the understanding that the business will feign

ignorance as to the source of the drug proceeds and will help funnel the currency to a drug trafficking organization's counterpart in Mexico. (*Id.* ¶ 11.) One such Black Market Peso variation that Mexican drug trafficking organizations utilize to launder and transmit their narcotics proceeds to Mexico involves the purchase of merchandize and other commodities through businesses in the Garment District. (*Id.* ¶ 11.) The goods purchased with the narcotics proceeds are exported to businesses in Mexico where those items are sold and the profits are returned to the Mexican DTO undetected by law enforcement. (*Id.* ¶ 11.)

Through wire intercepts of Solario, agents learned that Jauregui regularly delivered large quantities of narcotics proceeds to Solorio. (*Id.* ¶ 12.) Agents also intercepted Jauregui and learned that Jauregui operated a narcotics stash house in the Bell Gardens area in Los Angeles County. (*Id.* ¶ 13-14.) Jauregui's Mexican DTO contacts instructed Jauregui when and where to hand-off shipments of narcotics and collect narcotics proceeds. (*Id.* ¶ 14.) Jauregui was instructed by his contacts in Mexico to hand-off the drug proceeds to various Asian women identified by Jauregui's cartel contacts in Mexico. (*Id.* ¶ 14.)

On November 3, 2015, through Jauregui's intercepted conversations, agents learned that the Mexican DTO had instructed Jauregui to meet with Choi and hand-off $100,000.00 in narcotics proceeds. (*Id.* ¶ 15.) The Mexican DTO also instructed Jauregui to deliver kilograms of cocaine to a narcotics customer after delivering currency to Choi. (*Id.* ¶ 16.) The Mexican DTO provided Jauregui with Choi's telephone number. (*Id.*) Shortly thereafter, Jauregui contacted Choi arranging to meet outside Choi's residence in Los Angeles to make the $100,000.00 currency drop-off. (*Id.* ¶ 17.) Agents heard Choi confirm the expected drop-off with Jauregui. (*Id.*) Choi provided Jauregui her address in Los Angeles and instructed Jauregui to call her when he arrived at her residence. (*Id.*) Choi confirmed that she would meet Jauregui in front of her apartment complex. (*Id.*)

Based on the intercepted conversations, agents established surveillance at Choi's apartment complex in Los Angeles.  (*Id*. ¶ 18.)  Agents observed Jauregui arrive at the location and intercepted Jauregui's call to Choi indicating that he had arrived at her residence.  (*Id*.)  Choi confirmed that she would meet Jauregui downstairs.  (*Id*.)  Agents detained Jauregui outside Choi's apartment building and within a few minutes observed Choi exiting the lobby of her building carrying an empty bag while calling Jauregui's cell phone.  (*Id*. ¶ 19.)

Agents executed search warrants on Jauregui's residence in Bell Gardens, his vehicle, and Choi's residence in Los Angeles.  (*Id*. ¶ 20-21.)  From Jauregui's vehicle, agents seized approximately $100,000.00 in narcotics proceeds found inside a grocery bag.  (*Id*. ¶ 22.)  Trained and certified narcotics detecting canine "Zaia" alerted positively on the grocery bag containing the currency, indicating that there was an odor of illegal drugs emanating from the bag.  (*Id*.)  From Jauregui's residence in Bell Gardens, agents seized four kilograms of cocaine. (*Id*.)

Jauregui provided a post-*Miranda* statement.  Jauregui told agents that he had been working for a drug cartel, delivering kilograms of cocaine and illegal drug proceeds.  (*Id*. ¶ 23.)  Jauregui explained that when he collected the narcotics proceeds, his Mexican DTO contacts in Mexico gave him instructions on when, where, and to whom to hand-off the drug proceeds, which was either to business owners in the Garment District or to various Asian women.  (*Id*.)  Jauregui told agents that in the past, even as recently as the previous week, Jauregui had handed-off drug proceeds to a woman Jauregui believed to be Choi's daughter living in the Glendale area.  (*Id*. ¶ 24.)  Jauregui told agents that on November 3, 2015 (the day of the seizure), Jauregui had been instructed by his contacts in Mexico to meet this time with Choi as opposed to her daughter.  (*Id*. ¶ 25.)

Prior to executing the search warrant at Choi's residence, agents *Mirandized* Choi who agreed to speak with them.  (*Id*. ¶ 26.)  Choi told the agents that her

4

daughter, Lee, had instructed her to meet with Jauregui to receive money from Jauregui. (*Id.*) Choi admitted to the agents that she had been collecting money in this fashion from Mexican individuals for over 20 years, but would not elaborate much more on her involvement. (*Id.* ¶ 27.) Choi refused to identify her contacts in Mexico. (*Id.*) Choi did, however, admit that the money was collected through currency hand-offs in the United States and used to purchase commodities and textiles in the United States, which were then sent to Mexico. (*Id.*) Agents confronted Choi with the fact that the currency used in the hand-offs was proceeds of drug trafficking activities. Choi admitted that she understood that the nature of the currency was suspicious. (*Id.* ¶ 28.)

Executing a search warrant on Choi's residence, agents found a safe in a bedroom that appeared to be used for storage. (*Id.* ¶ 29.) Trained and certified narcotics detecting canine Zaia was run through Choi's residence, and alerted positively on the safe, indicating that the odor of narcotics was emanating from the safe. (*Id.*) Inside the safe agents found and seized $3,168,400.00 in U.S. currency (a defendant asset), 184 assorted valuable coins (a defendant asset), and 72 gold bars (a defendant asset). (*Id.*) Choi told agents that the approximately $3,000,000.00 in U.S. currency found in her safe was from years of collecting money from Mexican individuals in the fashion described above, and that one of the benefits to Choi was to not have to report money to the federal government thereby avoiding taxes. (*Id.* ¶ 30.)

At Choi's residence agents also found and seized bank statements from Wilshire State Bank and Bank of America for accounts in Choi's name, additional financial statements and paperwork in Choi's name, and keys for safe deposit boxes at Wilshire State Bank and Bank of America. (*Id.* ¶ 31.) On November 4, 2015, agents obtained search warrants for various bank accounts in Choi's name and bank safe deposit boxes belonging to Choi. Pursuant to those warrants, agents seized $489,900.00 in U.S. currency from a safe deposit box at Wilshire State

Bank (a defendant asset), $200,000.00 in U.S. currency from a safe deposit box at Bank of America (a defendant asset), and $138,401.14 in bank funds from Wilshire State Bank (a defendant asset).  (*Id*. ¶ 32.)

**LEGAL STANDARD**

### *Fed R. Civ. P. 12(b)(6)*

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must "take all of the factual allegations in the complaint as true," *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted) and "construe them in the light most favorable to plaintiffs." *New Mexico Investment Council v. Ernest & Young*, 641 F.3d 1089, 1094 (9th Cir. 2011) (internal quotation marks and citation omitted).  In addition, the resolution of Fed. R. Civ. P. 12(b)(6) motions requires that courts accept a complaint's material factual allegations as true "even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  As the Supreme Court has noted, "[a] district court weighing a motion to dismiss asks not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. at 563 n. 8 (citation omitted).  (internal quotation marks and citation omitted).

### *Supplemental Rule G(8)(b)(i) and G(2)(f)*

In addition to the Federal Rules of Civil Procedure, in rem civil forfeiture actions are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"),[1] and the Supplemental Rules authorize parties to file Fed. R. Civ. P. 12 motions and set forth standards governing the sufficiency of a complaint in a civil forfeiture action.  Supplemental Rule G(8)(b)(i) ("[a] claimant . . . may move to dismiss the action under Rule 12(b)"); and G(8)(b)(ii) ("[t]he sufficiency of the complaint is governed by Rule

---

[1] The Supplemental Rules govern forfeiture actions in rem arising from a federal statute, like the instant case.  *See* Supplemental Rules A(1)(B) and G(1).  In addition, the Federal Rules of Civil Procedure apply to *in rem* forfeiture actions, except to the extent that the Federal Rules of Civil Procedure are inconsistent with the Supplemental Rules.  *See* Supplemental Rule A(2).

G(2)")[2]  Pursuant to Supplemental Rule G(2)(f), a forfeiture complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  As the Ninth Circuit recently noted quoting from the Advisory Committee Note to Supplemental Rule G, "the language [of Supplemental Rule G(2)(f)] is designed to codify the 'standard' that 'has evolved' from case law interpreting [Supplemental Rule G(2)(f)'s] predecessor—Supplemental Rule E(2)(a)—and 'carr[y] this forfeiture case law forward without change.' "  *United States v. Aguilar*, 782 F.3d 1101, 1108 (9th Cir. 2015)[3]

In order to satisfy Supplemental Rule G(2)(f)'s requirement that a complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," the government's forfeiture complaint need only state the circumstances giving rise to the forfeiture claim with sufficient particularity so that claimants can commence a meaningful investigation of the facts and draft a responsive pleading.  *Aguilar*, 782 F.3d at 1108-9.  This "sufficient particularity" language is virtually identical to the language in Supplemental Rule G(2)(f)'s predecessor (i.e., Supplemental Rule E(2)(a)).  This rule regarding the sufficiency of a complaint was established by the Fourth Circuit's decision in *United States v. Mondragon*, 313 F.3d 862, 866-67 (4th Cir.

---

[2] Supplemental Rule G took effect on December 1, 2006, and was added by amendments to the Supplemental Rules.  *See United States v. $11,918.00*, 2007 WL 3037307, *2-3 (E.D. Cal. Oct. 17, 2007); *United States v. Approximately $70,000.00 in U.S. Currency*, 2007 WL 2992348, *3 (E.D. Cal. Oct. 11, 2007).  Prior to the December 1, 2006 amendments to the Supplemental Rules, Supplemental Rule G did not exist.  *See United States v. One Men's Rolex Pearl Watch*, 357 Fed. Appx. 624, 628 n.2 (6th Cir. 2009)

[3] *Accord*, *United States v. Sum of $70,990,605*, 4 F. Supp. 2d 189, 197 n. 3 (D.D.C. 2014) ("Rule E(2)(a)'s standard 'has evolved to the standard stated in [Rule G] subdivision (2)(f)' ") (quoting Supplemental Rule G Advisory Committee Notes regarding subdivision (2) of Supplemental Rule G); *United States v. $36,110.00 in U.S. Currency*, 2009 WL 692830, *4 (D.S.C. Mar. 12, 2009) ("[t]he 'reasonable belief' standard in Rule G(2)(f) is the same standard for sufficiency of a complaint contained in the previously applicable Rule E(2), and cases interpreting it") (citations omitted).

2002), which interpreted the pleading requirements under Supplemental Rule E(2)(a) and which case law is carried forward without change in interpreting Supplemental Rule G(2)(f). *Aguilar*, 782 F.3d at 1108-09.[4]

As the Ninth Circuit in *Aguilar* noted, the requirement that the government's complaint state the circumstances giving rise to forfeiture with sufficient particularity to enable the claimant to commence a meaningful investigation of the facts and draft a responsive pleading, presents a "***low bar***" for the government to satisfy. *Aguilar*, 782 F.3d at 1109 (emphasis added). The Ninth Circuit in *Aguilar* also noted that "[i]n *Mondragon*, the Fourth Circuit was clear that Supplemental Rule E(2)(a) does not articulate an onerous standard." *Aguilar*, 782 F.3d at 1108. Supplemental Rule E(2) is essentially a notice provision, requiring enough particularity to advise a claimant of the basic facts upon which the government intends to rely for forfeiture as well as the legal theories the government intends to pursue.

Supplemental Rule E(2)(a) has been interpreted to require that the government allege in the complaint "specific facts sufficient to support an ***inference*** that the property is subject to forfeiture." *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1219 (10th Cir. 1986) (emphasis added). The government need not set forth all its evidence, or even enough evidence to show

---

[4] As reflected in the Advisory Committee notes to Supplemental Rule E regarding the 2006 Supplemental Rule amendments, "Rule E is amended to reflect the adoption of Rule G to govern procedure in civil forfeiture actions." *Accord*, Advisory Committee notes to Supplemental Rule G regarding Supplemental Rule G's 2006 adoption ("Supplemental Rules A, C and E are amended to reflect the adoption of Supplemental Rule G"). In addition, and as noted in *Aguilar* as discussed above, "Rule G(2)(f) should be read to be consistent with <u>Mondragon.</u>" Supplemental Rule G Advisory Committee Note to subdivision (2) of Supplemental Rule G. Consistent with that result, the requirement (as reflected in <u>Aguilar</u>) that a complaint set forth the circumstances giving rise to forfeiture with sufficient particularity to enable the claimant to commence a meaningful investigation of the facts and draft a responsive pleading is virtually identical to previously applicable Supplemental Rule E(2)(a)'s language which provides that a forfeiture complaint  must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

that it will prevail; it is sufficient to show that, following discovery, it is reasonable to believe that the Government will be able to meet its burden of proof at trial.  *See United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004) ("the Government is not required to prove its case simply to get in the courthouse door"; if the Government had to have sufficient evidence at the time it filed its complaint to prevail on the merits at trial, the provision in CAFRA permitting the Government to rely on evidence gathered after the filing of the complaint would be meaningless).   Furthermore, the Government need not show that it can satisfy the tracing requirement to satisfy the pleading requirement.  *See United States v. $97,667.00 in U.S. Currency*, 538 F. Supp.2d 1246 (C.D. Cal. 2007) (complaint alleging results of surveillance of claimant, indications that claimant was a drug dealer, quantity of currency, and presence of "pay/owe" tally sheets sufficient to meet the reasonable belief standard; given that standard, cases where the government failed to meet its trial burden of preponderance of the evidence are not controlling with respect to a motion to dismiss on the pleadings); *see also United States v. $40,960.00 in U.S. Currency*, 831 F. Supp. 2d 968 (N.D. Tex. 2011) (the Government's inability to show that the defendant property is traceable to the offense is not a basis for a motion to dismiss; thus, it is not necessary for the Government to allege that it will rely on § 984 to satisfy the pleading requirement in Rule G(2)(f)); *see also United States v. Funds in the Amount of $193,773.00*, 2011 WL 6181424, *3 (M.D. Fla. Dec. 13, 2011) (whether the forfeiture action was commenced early enough to make § 984 applicable is irrelevant at the pleading stage because the Government does not have to establish the traceability of the property to satisfy the pleading requirement).

### ARGUMENT

The government's complaint effortlessly clears the "low bar" set by *Aguilar*, 782 F.3d at 1109. Based on the government allegations, which are to be taken as true under *Ashcroft*, 129 S. Ct. at 1949, it is very reasonable to infer that that for over 20 years, Choi operated an unlicensed money transmission business (a Black Market Peso Exchange) using her affiliated garment business in Mexico to launder large loads of drug money for Mexican drug traffickers, and amassed the defendant assets through this illegal business. Under this very reasonable—indeed, compelling— inference, the government has demonstrated that its claims are adequately pleaded to show that the defendant assets are subject to forfeiture because they are: (i) proceeds of drug trafficking, (ii) involved in concealment money laundering, (iii) involved in transactional money laundering, and/or (iv) involved in unlicensed money transmission. Accordingly, claimants' motion to dismiss should be denied.

### *The Government's Ultimate Burden at Trial*

As required by Supplemental Rule G(2)(f), the government's complaint sets forth sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. At trial, the government would be permitted to prove a drug nexus under a proceeds theory by a preponderance of the evidence, relying on the aggregate of circumstantial evidence with no need to trace any asset to a particular drug transaction.[5] In addition, all property *involved in*

---

[5] *See, e.g., United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985) ("[t]here is no need to tie the [defendant asset] to proceeds of a particular identifiable illicit drug transaction"); *see also United States v. Real Property Located at 22 Santa Barbara Drive*, 264 F.3d 860, 872 (9th Cir. 2001) (circumstantial evidence may be used to show property is subject to forfeiture); *see also United States v. U.S. Currency, $42,500.00*, 283 F.3d 977, 980-82 (9th Cir. 2002) (the fact-finder considers all of the facts indicative of the alleged illegal activity cumulatively).

money laundering, whether illicit or legitimate, would be subject to forfeiture.[6] And, all property *involved in* unlicensed money transmission would also be subject to forfeiture.[7]

---

[6] *See United States v. Baker*, 227 F.3d 955, 964-66 (7th Cir. 2000) (all proceeds of business that were used to bankroll the money laundering operation, including portions derived from legitimate business activities, and the business premises, as the location from which the money laundering scheme was directed, forfeitable as property used to facilitate the offense); *see also United States v. Garza-Gonzalez*, 512 Fed. Appx. 60, 67 (2d Cir. 2013) (because defendant used his legitimate business to launder drug money, he must pay a money judgment equal to the total revenue from the business); *see also United States v. Kivanc*, 714 F.3d 782, 794-95 (4th Cir. 2013) (residence in which fraud proceeds were invested is subject to forfeiture in its entirety as property involved in a money laundering offense, even though legitimate funds were also invested in the property); *see also United States v. Cessa*, 872 F.3d 267 (5th Cir. 2017) (where the government demonstrated by extensive evidence that defendant comingled cartel drug money in his otherwise legitimate accounts with the purpose of facilitating the money laundering offense, forfeiture order affirmed); *see also United States v. Kennedy*, 201 F.3d 1324, 1326 (11th Cir. 2000) (equity defendant acquired when he used SUA proceeds to buy a residence is forfeitable as property involved in a violation of section 1957); *see also United States v. McGauley*, 279 F.3d 62, 76-77 (1st Cir. 2002) (legitimate funds that are commingled with illegitimate funds can be forfeited if the commingling was done to conceal the illegitimate funds); *see also United States v. Aguasvivas-Castillo*, 668 F.3d 7, 17 (1st Cir. 2012) (untainted property may be forfeited in a money laundering case "if the legitimate funds were somehow involved in the offense, such as by helping to conceal the illegal funds"); *see also United States v. Seher*, 562 F.3d 1344, 1369 (11th Cir. 2009) (clean money in bank account into which jeweler deposited money from drug dealers as part of concealment money laundering offense was forfeitable because it gave the transaction a facade of legitimacy); *see also United States v. Trost*, 152 F.3d 715, 720 (7th Cir. 1998) (*dicta*) (legitimate funds may be forfeited if used to disguise illegitimate funds).

[7] *United States v. Elfgeeh*, 515 F.3d 100, 139 (2d Cir. 2008) (defendants convicted of operating an unlicensed money transmitting business in violation of section 1960 must pay a money judgment equal to the entire amount transmitted); *United States v. $829,422.42 in U.S. Currency*, 2013 WL 2446486, at *8 (D. Conn. June

### *The Government's Allegations Are Sufficient to Supports Its Claims*

Claimants essentially argue that the government does not allege specific transactions tying the defendant assets to drug trafficking (Motion at 7) and Choi's admissions concerning the approximately $3,000,000 in her safe do not cover the remainder of the defendant assets (Motion at 9).  These arguments misstate the allegations in the complaint and contradict prevailing law, which does not require that assets be traced to specific drug transactions (*see supra* note 5).  Furthermore, Choi's admission alleged in the complaint does indeed cover "*the approximately $3,000,000.00 in U.S. currency found in her safe*," which encompasses the entirety of the currency found in the safe including the $168,400 that claimants attempt to carve out.  The remainder of the assets are forfeitable under the government's theory that Choi's businesses and entire livelihood were permeated with money laundering and that her Black Market Peso Exchange was an informal, unlicensed money transmitting business.  (*See supra* note 6.)

The complaint contains allegations that are more than sufficient to support an inference that the defendant assets are proceeds of drug trafficking activity and were involved in unlicensed money transmission and money laundering of sums greatly in excess of $10,000 for purposes of concealing the illicit source of the money.  The allegations show that Choi amassed her wealth, including the defendant assets, by operating an illicit money laundering scheme over the course of decades.  Specifically, the government alleges the existence of the Black Market Peso Exchange used to transmit drug money from Los Angeles to Mexico in clandestine fashion, informally and without a license to avoid a paper trail.  (Compl. ¶ 11.)  The government further alleges that Choi and her daughter were part of one such Black Market Peso Exchange from which follows a reasonable inferences that the two were laundering drug proceeds by way of an informal,

---

5, 2013) (granting summary judgment for forfeiture of all funds in bank accounts through which unlicensed MSB transferred funds from U.S. to Brazil).

unlicensed money transmission business.  (*Id*. ¶¶ 12-31.)  The government further alleges that specific phone interceptions show the instructions given to drug dealer Jauregui to deliver $100,000 in drug proceeds to Choi.  (*Id*. ¶¶ 15-17.)  The government further alleges that surveillance led to Jauregui and Choi being caught red-handed during the delivery of drug proceeds, after which they both confessed, including Choi's admission that she had been engaged in these types of large-scale and admittedly "suspicious" cash exchanges for over 20 years; as a result, she had amassed millions including the bulk of the defendant assets.  (*Id*. ¶¶ 18-31.)  Finally, the government alleges that a trained and certified narcotics detecting canine was run through Choi's residence, and alerted positively on the safe, indicating that the odor of narcotics was emanating from the safe.  (*Id*. at ¶ 30.)

If the allegations in the complaint are taken as true, as required, the government would prevail easily on its claims, even without the additional discovery to which it is entitled.  To be clear, by Choi's own admissions, her affiliated garment business was permeated with money laundering and informal, unlicensed money transmission for drug dealers.  (*Id*. ¶¶ 11, 18-31.)  She admitted that the bulk of the defendant assets were amassed from large loads of "suspicious" cash (i.e., drug proceeds) received from unknown Mexican individuals similar to the drug trafficker, Jauregui, who was apprehended in this case.  (*Id*. ¶¶ 27-30.)  This dovetails with the government's explanation of the Black Market Peso Exchange, which encompasses various methods to launder drug money using informal, unlicensed money transmissions.  (*Id*. ¶ 11.)  Furthermore, the complaint shows that Choi has significant ties to both Los Angeles and Mexico, leading to a reasonable inference that she was well aware of the significant drug trade between Los Angeles and Mexico, which is common knowledge difficult to avoid for any Angelino, let alone a sophisticated business woman operating an international import/export business between Los Angeles and Mexico while regularly receiving hundred-thousand-dollar cash drop offs from unknown Mexican individuals for

transmission to their cohorts in Mexico.  (Id. ¶¶ 24-31.)  The fact that DTOs trusted Choi for decades with hundred-thousand-dollar transmissions adds tremendous weight to the inference that Choi knew she was laundering drug money or, at the very least, was deliberately ignorant to the fact.  *See United States v. Heredia*, 483 F.3d 913 (9th Cir.2007) (en banc) (citing *United States v. Jewell*, 532 F.2d 697 (9th Cir.1976) (en banc)) (allowing for assessment of knowledge based on deliberate ignorance).

The complaint is sufficient to establish an inference that the defendant assets are proceeds of drug trafficking and/or were involved in the money laundering/unlicensed money transmission business Choi had been operating for decades using her garment business.  Choi essentially admitted that her garment business ran in tandem with her unlicensed money transmission/money laundering business in order to evade tax reporting requirements.  Her entire operation and livelihood, including all defendant assets are thus forfeitable.  (*See supra* notes 6 and 7.)

### *Claimants' Miscellaneous Arguments are Unavailing and More Appropriate for Consideration in a Summary Judgment Motion*

Claimants argue that the government has not refuted their potential defense of alternate sources of income.  (Motion at 7.)  Under prevailing law, this argument is of no moment at the pleading stage.  *See United States v. Real Property... 216 Kenmore Ave.*, 657 F. Supp. 2d 1060, 1066-67 (D. Minn. 2009) (the sufficiency of a complaint is governed by Rule G(2); the Government does not have to negate the claimant's defenses but only has to set forth facts that support a viable case, regardless of what arguments or evidence the claimant might offer at trial); *see also United States v. All Funds ... Held in the Name of Kobi Alexander*, 2008 WL 3049895, * 5 (E.D.N.Y. 2008) (complaint satisfies Rule G(2)(f) if it alleges sufficient facts to support a reasonable belief that the Government will be able to prevail at trial; that claimant has a defense that may be sufficient to prevent the

Government from succeeding does not render the complaint insufficient);  *see also United States v. 3885 Forest Street*, 2013 WL 560161, *2 (D. Col. Feb. 14, 2013) (the complaint need not address the property owner's role in the offense or any defenses she may raise).  Furthermore, claimants' assertion that they intend to show a legitimate source of income at trial has no bearing on this motion, because a motion to dismiss concerns only the sufficiency of the government's complaint. *United States v. The Painting Known and Described as "Madonna and Child*,*"* 2015 WL 108416 (S.D.N.Y. Jan. 6, 2015) (claimant's disagreement with the version of the facts set forth in a forfeiture complaint has no bearing on the merits of her motion to dismiss; at the pleading stage, the court is concerned only with the complaint's sufficiency); *see United States v. Funds in the Amount of $29,266*, 96 F. Supp. 2d 806, 809 (N.D. Ill. 2000) (on motion to dismiss, plaintiff's allegations assumed to be true; evidence outside the pleadings rebutting the complaint will not be considered unless motion is converted into a motion for summary judgment). Finally, Choi's previous admissions concerning the illicit source of the defendant assets contradicts her new found defense here, which, if raised, the government would seek to refute at the appropriate time after discovery.

Claimants argue that Choi could not have both kept the money from the Mexican drug lords in the United States and bought merchandise to send to Mexico to replenish the money given to cartel members in Mexico.  (Motion at 8.)  As an initial matter, claimants' argument concerns not the sufficiency of the complaint, but the weight of the evidence, which is an argument inappropriate for a motion to dismiss.  *See supra*.  Furthermore, claimants' criticism misses two reasonable inferences that follow from the government's allegations: (1) that Choi was likely collecting hefty fees for laundering large loads of drug-trafficking cash; and (2) that the arbitrage between wholesale and retail left Choi with significant room for profit retention in the United States—to wit, that the money in the United States would naturally be used to buy items in wholesale which would then be sold in

retail in Mexico for a significant mark-up, allowing for large sums of money to remain in the United States despite the purchase of goods.

Claimants argue that the government has alleged that the canine alerted to Choi's safe, which they argue means that only the safe (not the assets inside it) was in the presence of narcotics. Again, as an initial matter, this argument goes not the sufficiency of the complaint, but to weight to be accorded the canine alert, which is an issue not appropriate for a motion to dismiss, but for a summary judgment motion or trial. *See supra*. As concerning the sufficiency of the complaint on this point, the government's allegation supports the most reasonable inference—that the canine had detected a drug odor emanating from contents of the safe. Claimants position to the contrary is fanciful, because for it to prevail, a fact-finder would need to believe that Choi's safe was doused with illegal drugs while the proceeds inside it had nothing to do with drug trafficking despite the overwhelming evidence including wiretap evidence, drug evidence, and confessions to the contrary.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the claimants' motions be denied. If the Court concludes that the complaint does not plead sufficient facts to state a claim for relief, the government respectfully requests it be given the opportunity to amend the pleading.

DATED: November 13, 2017     Respectfully submitted,
SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

*/s/ Yasin M. Almadani*
YASIN M. ALMADANI
Assistant United States Attorney
Attorneys for Plaintiff
UNITED STATES OF AMERICA

16